**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| SWEAT TIRE COMPANY INC., SWEAT TIRE COMPANY OF BAY MINETTE, INC., SWEAT TIRE COMPANY OF MONROEVILLE, LLC, SWEAT TIRE COMPANY OF SOUTH BALDWIN, LLC, SWEAT TIRE WEST, LLC, MARVIN D. HAYES, JR., and CARMEN HAYES., | ) ) ) )  CASE NO.:  25-CV-402 ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | |
| FASTLAP, LLC | |
| Defendant. | |

**COMPLAINT**

COMES NOW the Plaintiffs, by and through their attorneys, J. Thomas Pilcher, IV, in the above styled matter and files this Complaint against the Defendants as follows:

**PARTIES AND JURISDICTION**

1. Sweat Tire Company, Inc. is an Alabama Corporation, that conducted business in Baldwin County, Alabama.

2. Sweat Tire Company of Bay Minette, Inc. is an Alabama Corporation, that conducted business in Baldwin County, Alabama.

3. Sweat Tire Company of Monroeville, LLC is an Alabama Limited Liability Company that conducted business in Escambia and Monroe County, Alabama.

4. Sweat Tire Company of South Baldwin, LLC is an Alabama Limited Liability Company that conducted business in Baldwin County, Alabama.

5. Sweat Tire West, LLC is an Alabama Limited Liability Company that conducted business in Mobile County, Alabama.

6. Marvin D. Hayes, Jr. is over the age of 19 years and a resident citizen of Baldwin County, Alabama.

7. Carmen Hayes is over the age of 19 years and a resident citizen of Baldwin County, Alabama.

8. FastLap, LLC, is a foreign corporation conducting business in Baldwin County, Alabama.

9. The amount in controversy exceeds the jurisdictional limits of this Honorable Court, exclusive of interest and costs.

10. The parties entered into a binding agreement, which declared the governing law, forum selection, jurisdiction and venue. Under the terms of said agreement, this matter is properly brought in the Federal Courts of Alabama, with the governing law being that of the State of Delaware.

## FACTUAL ALLEGATIONS

11. Sweat Tire Company, Inc., was in the business of providing automotive services and sales of tire and automative parts, with locations in Fairhope, Alabama; Loxley, Alabama; and Robertsdale, Alabama.

12. Sweat Tire Company of Bay Minette, Inc. was in the business of providing automotive services and sales of tire and automative parts, with locations in Bay Minette, Alabama.

13. Sweat Tire Company of Monroeville, LLC was in the business of providing automotive services and sales of tire and automative parts, with locations in Atmore, Alabama; Flomaton, Alabama; and Monroeville, Alabama.

14. Sweat Tire Company of South Baldwin, LLC was in the business of providing automotive services and sales of tire and automative parts, with locations in Elberta, Alabama and Foley, Alabama.

15. Sweat Tire West, LLC was in the business of providing automotive services and sales of tire and automative parts, with locations in Mobile, Alabama.

16. Sweat Tire Company, Inc., Sweat Tire of Bay Minette, Inc., Sweat Tire of Monroeville, LLC, Sweat Tire of South Baldwin, LLC, and Sweat Tire West (Sweat Tire entities

are hereinafter referred to collectively as "Sweat Tire") were owned and operated by Marvin D. Hayes, Jr. and Carmen Hayes.

17. The negotiations between FastLap, Sweat Tire, Marvin D. Hayes, Jr., and Carmen Hayes took place over a period of time in 2023, carrying into 2024, and involved several meetings. The overall purchase price was a contention, but the more pertinent negotiation discussion to this lawsuit resolved around funds that were to be held back in relation to store locations and closing adjustments related to closing working capital.

18. Prior to purchase and during negotiations, Carmen Hayes met with Al Wheeler, an Agent acting on behalf of FastLap, and other representatives of FastLap on more than one occasion to review Sweat Tire accounts receivable. The purpose of those meetings was to get a basic understanding of the A/R True Up situation before hand, so there would be no confusion after the closing. At the conclusion of these meetings, FastLap representatives made statements to both Carmen Hayes and Marvin D. Hayes, Jr that would make them believe any later escrow monies would be subject to a nominal adjustment, at most, and would most likely be a net even such that there would be no AR/True up necessary. Relying upon those statements, the Sweat Tire executed the Asset Purchase Agreement.

19. It was reasonable for Sweat Tire, Marvin D. Hayes, Jr., and Carmen Hayes to rely upon the statements of the FastLap representatives. Furthermore, the Plaintiffs would not have sold their assets if not for those statements by FastLap representatives.

20. FastLap purchased Sweat Tire, in the form of an Asset Purchase Agreement (hereinafter referred to as "APA") on February 28, 2024,

21. The Purchase Price was laid out in accordance with Section 1.02 of the APA. The APA called for a down payment, and provided certain funds were to be held back pursuant to Indemnity Holdbacks, Lease Holdbacks, Estimated Closing Debt, Estimated Sellers Transaction Expenses, and Estimated Working Capital Surplus or deficit. Further, the APA allowed for any monies that are to be paid to FastLap through hold back to be drawn from the Indemnity Holdback.

22. As part of the Estimated Working Capital, FastLap was to receive Sweat Tire's accounts receivable and make a good faith effort to recover those funds.

23. Section 1.3 of the APA details the post-closing adjustments. In particular, FastLap was to prepare and deliver a written statement setting forth their good faith calculations to determine if the actual working capital was more or less than the estimated amount. This notice was to be given within one hundred twenty (120) days from the closing date.

24. Notice was defined by the APA in Section 7.03 as follows:

**Notices**. All notices, demands, designations, certificates, requests, offers, consents, approvals, appointments and other instruments given pursuant to this Agreement or any other Transaction Documents (collectively, "Notices") shall be in writing and given by: (a) hand delivery; (b) reputable express overnight delivery service, costs prepaid; (c) email transmission; or (d) certified or registered mail, return receipt requested, postage prepaid, and shall be deemed to have been delivered upon: (i) receipt, if hand delivered; (ii) the next business day, if delivered by a reputable express overnight delivery service, costs prepaid; (iii) transmission, if delivered by email; or (iv) the fifth (5th) business day following the day of deposit of such notice with the United States Postal Service, if sent by certified or registered mail, return receipt requested, postage prepaid. Notices shall be provided to the Parties and addresses (or email addresses, as applicable) specified below:

If to any Seller or any Equityholder:

Sweat Tire Company, Inc.
28551 Roserun Road, Robertsdale, Alabama 36567
Attention: Marvin D. Hayes, Jr.
Email: sweattire07@gmail.com

With a copy to:

Pilcher & Grissom LLC
P.O. Box 400
Bay Minette, Alabama 36507
Attention: Thomas Pilcher
Email: jtp@pglawllc.com

25. No formal notice, or document named "Post Closing Adjustment Statement" as statedin Section 1.3(a) was ever delivered to the Purchaser.

26. On May 14, 2024, an email styled, "Sweat Assumed APPaid Recon 5.7.24-c.xlsx" was delivered to sweattire07@gmail.com, however, it was not delivered as required under the contract documents because no copy was ever delivered to their attorney, as was required under the terms of the contract.

27. The contents of the email depict "Tru Up Estimates," as opposed to Post Closing Adjustment Statements, further the email makes no notice that the intent is to serve as the "Post Closing Adjustment Statement", making it the notice improper, as it is not clear with the communication that exactly what is being disclosed.

28. Assuming, in arguendo, that this improper notice is correct, the APA provides that any objections to the Post Closing Adjustment Statement must be provided within thirty (30) days. An email was delivered to FastLap and their attorneys on May 30, 2024, sixteen (16) days after the alleged notice, noting their breach of contract related to the Foley Store. That email

states the following regarding Sweat Tires objections to the Tru Up Estimates and Post Closing Adjustment Statement:

> "Finally, during the negotiation, **we were told there would be no post closing adjustments, however, it appears there are now claims of post closing adjustments. I am not sure how the accounting would have been acceptable prior to closing, but is now somehow not.** It seems that some parties at FastLap are attempting to use those as a means to not pay the Foley Holdback. This would not be acceptable as any claims related to a post closing adjustment would not be deducted from the Foley Holdback. Those funds were specifically held and with the intention of being provided in an effort to locate a future location. The only acceptable reduction on the Foley Holdback would be related to delays associated with the Foley location, of which there were none. **Additionally, we do not believe there to be any post closing adjustments**, however, if there are found to be any, the Indemnity Hold Back of $400,000 would be satisfactory to cover any post closing adjustments.

29. The email very clearly objects to any post closing adjustment statements, whether formal, or informal.

30. Furthermore, the email was acknowledged, and a dispute of the post closing adjustment noted by FastLap on June 3, 2024. Said email by Al Wheeler, FastLap's agent and representative states:

> "We are also working diligently to resolve any discrepancy on the post-closing adjustments. The post-closing adjustments are detailed in the Asset Purchase Agreement in Section 1.03 and are due to be completed within 120 days of the closing. We will be working with them (when they are back in town next week) to finalize these and make sure that everyone is on the same page."

31. From this point, multiple versions of the post closing adjustment balances were delivered from both FastLap and Sweat Tire, such that no agreement was had as to the balances.

32. Section 1.3(d) provides, in the event that an agreement can not be obtained within thirty (30) days, the parties are to submit their positions to an Independent Accountant, who would then resolve any disagreements on this issue.

33. Upon learning that the informal and improper notice was being relied upon as a post closing statement, Sweat Tire asked to invoke 1.3(d) - FastLap refused.

34. May 3, 2024, MDH Properties, LLC a company owned by Marvin D. Hayes, Jr. acquired a replacement property in Foley, Alabama. This property was mentioned in APA Section 1.2(d)(i)(B), and it was understood funds were to be paid upon the securing of this replacement property. APA Section 1.2(d)(ii) and (iii) provide the actions necessary to have those funds release, and gives the description for the timeline of required actions by both parties.

35. FastLap was to execute a lease, and transfer the Hold back funds, less any losses that may have come due to a delay in obtaining the replacement location or in losing the initial location. There were no losses related to delays, and FastLap was able to stay in the initial location, meaning that all funds related to the Foley Holdback were to be released.

36. The Foley Holdover period ends upon Sweat Tire securing a replacement location, however payment is triggered upon a lease being executed. Payment would then be triggered after five (5) days from said lease execution.

37. FastLap, upon learning that a replacement location was secured, moved into and began operations in the replacement location. However, they failed to execute a lease within a timely manner, and upon entering into the Lease, failed to tender payment within five (5) days. Payment of the Foley Holdback was ultimately tendered on August 26, 2024, much after the five (5) day period, and after additional losses were incurred by Sweat, such as mortgage payments, insurance, and equipment. The total of those losses was $82,413.55, and this balance has never been paid.

38. There were two other lease holdbacks, being the Fairhope Lease Assignment and the Loxley Lease Assignment. A total of $400,000.00 were related to those holdbacks, meaning, that upon securing either a replacement location or a satisfactory assignment, FastLap was to release those funds to Sweat Tire. In order to trigger the funds, both locations had to be secured. APA Section 1.2(d)(i)(b)-(d).

39. Sweat Tire secured an satisfactory assignment of the Fairhope location, and put a downpayment of $5,000.00 on a replacement location in Loxley, Alabama. However, upon learning of the fraudulent practices, and breach of contract by FastLap, Sweat Tire elected to not pursue the Loxley location, thus losing the $5,000.00 downpayment and the $400,000 holdback funds.

40. The Indemnity Holdback funds were due on February 28, 2025. As of today's date, no payment has ever been tendered.

41. Marvin D. Hayes, Jr. and Carmen Hayes have suffered financial and emotional distress as a proximate cause of the actions taken by FastLap and/or their agents and/or representatives.

## COUNT I
## BREACH OF CONTRACT

42. The Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

43. The Plaintiffs entered into a valid and enforceable contract, the APA, as described in the foregoing paragraphs, with FastLap.

44. The Plaintiffs performed all obligations necessary to complete the terms of the contract, and obtain all funds related to the Holdback Provisions.

45. FastLap failed to perform in accordance with the terms of the Contract, in that they breached the contract as follows:

   a. Failure to act in good faith in obtaining accounts receivable owed after the closing date;
   b. Failure to provide notice in accordance with the Estimated Working Capital;
   c. Failure to submit to a third party accountant related to the objection of the Estimated Working Capital;
   d. Failure to act in good faith in submitting a good faith estimate of Estimated Working Capital;
   e. Failure to tender funds in accordance with the Foley Replacement Location; and
   f. Failure to tender the Indemnity Holdback funds.

46. As a proximate result thereof, the Plaintiffs have suffered damages to include monetary damages.

WHEREFORE, the Plaintiffs respectfully demand judgment against the Defendant plus interest and costs within the jurisdictional limits of this Court.

## COUNT II
## FRAUD

47. The Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

48. FastLap, or agents of FastLap, made representations to the Plaintiffs that there would be very little to no Closing Working Capital Deficit based upon the Estimated Closing Working Capital Sheet provided and multiple discussions regarding the Sweat Tire books prior to closing.

49. Upon later assertions and actions taken by FastLap, those representations are false.

50. The Plaintiffs relied upon the representations FastLap or agents of FastLap, in that they would not have entered into the Asset Purchase Agreement if FastLap would have made true and correct representations at the time they were made.

51. The Plaintiffs have suffered damages, to include financial and emotional damages, as a result of the false representations.

WHEREFORE, the Plaintiffs respectfully demand judgment against the Defendants, to include compensatory, mental anguish and punitive damages, plus interest and costs within the jurisdiction limits of this Court, and any other relief as deemed just and proper.

Respectfully Submitted,

By: _/S/ J. THOMAS PILCHER, IV_
J. Thomas Pilcher, IV
PIL013
Attorney for Plaintiffs
PILCHER & GRISSOM
PO Box 400
Bay Minette, AL. 36507
251-239-8182
jtp@pglawllc.com

**PLEASE SERVE DEFENDANT AS FOLLOWS**:

FastLap, LLC
580 Kingsley Park Drive
Suite 325
Fort Mill, South Carolina. 29715-6403

FastLap, LLC
Attn: Corporation Service Company
641 South Lawrence Street
Montgomery, Alabama 36104